ELIAS BACH *et al.*, Respondent, *v.* SIMON TUCH, as Assignee, etc., Appellant.

*Supreme Court, First Department, General Term, November 7, 1889.*

1. *Election of remedies.* *Replevin.*—An action on the contract to recover the price of goods sold, brought before knowledge of the purchaser's fraud in the transaction, does not deprive the vendor of the right to rescind the sale and recover the property.
2. *Trial.* *Charge.*—A direction to the jury that it was a question of fact whether or not the vendor was aware of his remedy by replevin when he brought his action by attachment, is erroneous.

Motion by defendant for a new trial on exceptions ordered to be first heard at the general term.

*Alfred P. W. Seaman* and *Edmond E. Wise*, for defendant.

*B. F. Einstein*, for plaintiff.

DANIELS, J.—This action was before this court upon an appeal by the plaintiffs in 1888, and the judgment which had then dismissed the complaint was reversed and a new trial ordered. Bach *v.* Tuch, 15 N. Y. State Rep. 49.

It was then considered that the right of the plaintiffs to maintain the action depended upon a question of fact to be submitted to the jury. It was brought to recover the possession of twenty-one cases of leaf tobacco, which had been sold by the plaintiffs' firm to Rudolph Moeller, the assignor of the defendant Tuch. And seventeen of these cases had been replevied in the suit.

To maintain the action evidence was given tending to show that the assignor had misrepresented his financial circumstances at the time when he applied to the plaintiffs' firm for

the purchase of the tobacco, and that instead of being a man of responsibility he was at the time insolvent.

The defense in the action consisted of the fact that the plaintiffs' firm commenced an action in December, 1885, for the purchase-price of the tobacco, and issued an attachment in that action against the property of the purchaser. In the affidavit upon which the attachment was issued it was stated by one of the firm that the purchaser had represented that he was worth the sum of $12,000 over and above his debts and liabilities, and was perfectly solvent, and that the sale was made in reliance upon the truth of that representation. It was then added," that said statement and representation so made as aforesaid were false and untrue in every particular, and this defendant must have known that the same were untrue when he made the same to deponent." The attachment was not issued on this ground, but it was issued upon the charge that the debtor had made a fraudulent assignment to cover up his property and remove it beyond the reach of his creditors, and for the protection of himself and his wife who was preferred to the extent of $10,000, and that he had thereby removed and disposed of his property with the intent to cheat and defraud his creditors. The action in which the attachment was issued continued to be pending until the 20th of February, 1886, and then it was discontinued. And after that this action was brought for the recovery of the possession of the tobacco.

By these proceedings it has been contended, as it previously was, that the plaintiffs' firm had elected to recover the price of the tobacco, and by such election had deprived themselves of the power afterwards to rescind the sale and recover the property. And no doubt has at any time been entertained but that this was the legal result, if the firm had become aware of the fact when the action for the debt was commenced that the purchase had been fraudulently made by the assignor. Foundry Co. *v.* Hersee, 103 N. Y. 25; Hays *v.* Midas, 104 N. Y. 602.

But while the affidavit upon which the attachment was issued stated that the representations were false in every particular, and must have been known to be so by the purchaser when he made the purchase, it was nowhere stated that there was any intention whatever on his part to deceive, or thereby defraud the firm. That, it is true, could well be inferred from the fact that the representations were untrue, and were known to have been so by the purchaser of the tobacco. But that inference was neither ascertained nor stated by the member of the firm who made the affidavit upon which the attachment was issued. And it therefore did not appear that he, or his firm, had discovered, or in any manner come to the knowledge of the fact that the fraudulent intent existed on the part of the purchaser. And that was essential to conclude the firm by the action brought for the recovery of the debt. Without that discovery, and without that being the fact, the firm could not maintain an action to recover the possession of the tobacco. And it may be inferred not to have been made by the firm until the action in which the attachment had been obtained was discontinued. And if that had not been previously discovered by the firm, or either of its members, it was not concluded by the action for the debt from taking proceedings upon its discontinuance for the disaffirmance of the sale. And whether the fact had come to the knowledge of, or been discovered in any form by the plaintiffs, that the purchaser was actuated by an intent to deceive and defraud them in the purchase of the tobacco, was the sole question required to be submitted to the jury for the disposition of this part of the plaintiffs' action. In its submission to the jury the direction extended beyond this. And the right of the plaintiffs to maintain the action was in part made dependent upon their knowledge of their legal ability, or right, to disaffirm the contract.

In that direction the court proceeded further than the plaintiffs were entitled to have the jury instructed. It was

also added in answer to an inquiry made by the jury, that it was a question of fact whether or not the plaintiffs were aware of their remedy by replevin, when they brought their action by attachment. To these propositions submitted to the jury the defendant excepted. And these exceptions were well taken. For the ability of the plaintiffs to maintain the action to recover the possession of the tobacco was in no respect dependent upon the absence of their knowledge of the legal remedy which might be instituted and pursued for the recovery of the possession of the property. What was in the case, and all that was in it on this part of the controversy, was the simple question whether this was a fraudulent purchase of the tobacco by the assignor, and whether the firm, or either of its members, had discovered the fraud at the time when the action for the recovery of the debt was brought and the attachment was issued, or after that discovery proceeded with its prosecution. It is upon this inquiry, as a matter of fact, that the right of the firm to maintain the action has become dependent. Whether it was known to either of its members what the particular remedy would be through which the possession of the tobacco might be obtained was not of the slightest consequence. And as their knowledge of the existence of the remedy was in this manner brought into the case, and the verdict probably proceeded upon it, the verdict should be set aside and a new trial ordered, with costs to the defendant to abide the event.

VAN BRUNT, P. J.—I concur in the result. I am of the opinion that the averments of the affidavit in the attachment suit show that the plaintiffs knew of the fraud at the time that action was commenced, and, hence, having sued for the purchase-price with knowledge of the fraud, cannot now be permitted to rescind the sale.

BRADY, J., concurs.

NOTE ON "ELECTION OF REMEDIES."

The doctrine of election of remedies consists in holding the party, to whom several courses were open for obtaining relief, to his first election, where he subsequently attempts to avail himself of some further and other remedy not consistent with, but contradictory of, his previous attitude and action upon his claim. Mills *v.* Parkhurst, 126 N. Y. 89. The basis for the application of the doctrine rests upon the proposition that, where there is, by law or by contract, a choice between two remedies, which proceed upon opposite and irreconcilable claims of right, the one taken must exclude and bar the prosecution of the other. Id.

This rule depends upon the inconsistency of the remedies. Crossman *v.* Univ. Rub. Co., 127 N. Y. 34. Where there is no incompatibility, both may be pursued. Id. A proceeding in equity in another state against the defendant as an insolvent corporation, which was taken in affirmance of a sale, but sought to repudiate the terms of credit by reason of fraud on the part of defendant's officers, was held not to be inconsistent with and not to prevent a subsequent action in this state to recover upon the notes given for the purchase-money. Id.

The pendency of an action by a creditor to set aside a general assignment on the ground of fraud, will not bar his right to share in the distribution of the assigned estate under the assignment. Mills *v.* Parkhurst, 126 N. Y. 89.

Where the defendant, after the service upon him of a summons, commenced an action in another county upon a claim against the plaintiff which he might have interposed in the first action, and the plaintiff therein again sets up the facts on which his cause of action depended as a counterclaim, it was held in Henderson *v.* McReynolds, 60 Hun, 579, that the plaintiff should not be required to elect in which action his demand should be tried.

Where the plaintiff made several sales of goods to the defendant, and subsequently brought an action of replevin on the ground of alleged false representations inducing such sales, and the only goods taken in the replevin proceeding were some included in the last two sales, it was held in Thompson *v.* Fuller, 41 N. Y. St. Rep. 224, that this constituted an election of remedies and was a disaffirmance of all the sales, and that an action to recover the purchase price of the remainder could not thereafter be maintained. It is not material on this question how much of the property embraced within the replevin suit the plaintiff succeeded in obtaining. Id. The contract would be disaffirmed if the plaintiff had not succeeded in finding any of the property. Id. He cannot recover the value of such of the property as he could not find and replevy. Id. The alleged cause of action must determine whether the plaintiff disaffirmed the contract of sale. Id.

An action to recover the purchase price of goods, with knowledge of fraud in the sale, estops the vendor from rescinding the contract. Bach *v.* Tuch, 126 N. Y. 53.

Ignorance of similar frauds, or of some of the proof, does not effect such election. Id.

An attachment proceeding and chancery suit in New Jersey, do not constitute an election of remedies, which will prevent an action in this state upon a note taken for a portion of the goods. Crossman *v.* U. R. Co., 127 N. Y. 34.

Their pendency may presumptively operate by way of abatement of the latter action. Id.

The evidence of their discontinuance or inefficacy is material to avoid this presumption. Id.

See note in 2 Sil. Ct. of App. 291.