CROSSMAN *et al. v.* UNIVERSAL RUBBER CO.

(*Superior Court of New York City, General Term.*   February 6, 1890.)

SALE—ACTION—ELECTION OF REMEDIES.

A sale of goods by plaintiffs to defendant was induced by the fraud of the latter. In a suit brought for the purpose, plaintiffs obtained the appointment of a receiver of defendant's property on a petition in which they alleged the facts constituting the fraud, and repudiated the contract. *Held*, that they thereby elected to rescind the sale, and could not afterwards resort to notes given for the purchase price; and that it was immaterial that no answer was interposed by defendant, no judgment entered, and no claim proved by plaintiffs before the receiver.

On exceptions from trial term.

Action by William H. Crossman and others against the Universal Rubber Company of New York.   The court ordered the complaint dismissed, exceptions to be heard in the first instance at general term.

Argued before SEDGWICK, C. J., and FREEDMAN and INGRAHAM, JJ.

*Carlisle Norwood, Jr.*, for plaintiffs.   *Benjamin Estes*, for defendant.

INGRAHAM, J.   The question presented in this case is whether, where the vendor of goods has elected to rescind a sale which was fraudulent, by commencing a proceeding in a court of justice, based upon such rescission, and in which proceedings the relief which such vendor asks was granted, and which judgment or decree granting such relief remains in full force and effect, there is any contract that can be after such an election enforced.   In this case plaintiffs were the owners of goods sold to the defendant.   They received the defendant's notes for the purchase price.   Such sale was induced by fraud. Plaintiffs then had the right to rescind the sale as fraudulent, and reclaim the goods, and had also the right to insist that the sale was void, and recover the value of the goods, notwithstanding that notes given for the purchase price had not matured.   These positions are based on the invalidity of the sale, and were inconsistent with the fact of the existence of a valid obligation of the vendee on the contract.   The right to recover the possession of the goods could not exist with the right to recover on the notes; nor could the right to recover the value of the goods obtained by fraud, on the sale of which the notes were given, exist with the right to recover on the notes.   If one of these positions was taken and enforced, it is clear that the other could not be. Plaintiffs, having this right to proceed, elected to rescind the agreement for the sale, for which the notes had been given, and declare that the amount was due, offering to return the notes.   They did this by presenting to the chancellor of the state of New Jersey a petition, in which they alleged the facts constituting the fraud, and thereby repudiated the contract; that the defendant was then indebted to the plaintiffs, for goods obtained by it by false representations, to the value of $9,309; and asked the appointment of a receiver of the defendant's property, and that such indebtedness be paid out of the property of the defendant.   That application was granted.   A receiver was appointed, who took possession of the defendant's property.   That such an election was binding upon the plaintiffs, and that the contract upon which the notes were given, namely, the sale of the goods, had been destroyed by the rescission of the sale by the plaintiffs, is clear, and, there being no contract for the sale of

the goods, there was no consideration for the notes, and no action could be maintained to recover the amount due thereon.

There has been no case cited that holds that where a party, entitled to rescind a contract, has elected to rescind it, and has upon such election enforced a remedy against the other contracting party, that said election has not been binding. In *Kinney* v. *Kiernan*, 49 N. Y. 168, RAPALLO, J., says: "But after the plaintiff had made a valid election to avoid the sale, and had asserted his title to the goods by bringing this action, the contract of sale was at an end. The fraud being established, neither Gill & Co. nor their vendees (other than *bona fide* purchasers) could claim any title under the sale, and the right of action of the plaintiff against Gill & Co. upon the contract was gone." No subsequent act of the plaintiff alone could "revive the contract, or the right of action thereon, which had thus been destroyed." And it was there held that bringing an action against Gill & Co. on the contract, and the recovery of a judgment in that action, did not affect the rights of the plaintiffs in the action previously commenced for the conversion; "that such an action on contract could not debar the plaintiff from prosecuting his action for conversion, because the right of action no longer existed at the time the action on contract was brought." GROVER, J., in his dissenting opinion, (page 174,) said: "An election to rescind, when distinctly made, cancels and puts an end to the contract *in toto*, and restores the vendor to his original title as owner of the property. * * * It follows that a rescission of the contract would constitute a bar to an action brought by the vendor against the purchaser upon the contract of sale for the recovery of the price of the goods. That contract is terminated by the rescission, and has no validity whatever thereafter." There was no dissent by any member of the court from the rule thus stated, and I have been unable to find that this decision has ever been questioned. In *Moller* v. *Tuska*, 87 N. Y. 169, the same principle was distinctly asserted. It was there said: "The plaintiffs manifested their election by bringing this action. After that, the other way of redress was not open to them. * * * Hence they could never successfully assert a claim against the purchaser under the contract; for the election to disaffirm it had been manifested, and to revoke it was not in their power. * * * The contract was at an end, and no act on the part of the plaintiffs alone could revive it." In neither of these cases had the plaintiff obtained any benefit by the action brought in disaffirmance of the contract, but it was held that bringing such an action was of itself such a disaffirmance of the contract that the contract was at an end, and that no act of the plaintiff alone could revive it.

Our attention has been called to many cases in which the effect of an action to recover the contract price of goods sold upon a subsequent action in disaffirmance of the contract has been discussed, and it is difficult to reconcile all that has been said in the cases cited. In many of the cases the decision is put upon the ground that the fraud was not known to the party seeking to rescind, at the time the action was commenced upon the contract. It has, however, sometimes been held that the mere commencement of an action to recover the contract price, which has not resulted in any advantage to the defrauded party, and which was discontinued before the contract was sought to be rescinded, was not such an election as would prevent such a rescission. The law on this subject has been determined in *Conrow* v *Little*, 115 N. Y. 387, 22 N. E. Rep. 346. That case combines *Foundry Co.* v. *Hersee*, 103 N. Y. 26, 9 N. E. Rep. 487, and *Hays* v. *Midas*, 104 N. Y. 602, 11 N. E. Rep. 141, and holds that bringing an action on the contract, with a knowledge of the facts on which fraud is subsequently charged, is a definitive waiver of the right to proceed for fraud. But in no case has it been held that an election to rescind, duly and deliberately exercised, could be recalled, and an action subsequently maintained on the contract.

I think, therefore, that the action of the plaintiffs was a rescission of the con-

tract of sale; that after such a rescission the notes were in the hands of the plaintiffs without consideration, and no recovery could be based upon them. There was no judgment or decree of the chancellor that indicated that he did not base his action upon this election of rescission. In that proceeding the plaintiffs asked and obtained relief, and in their petition their demand for such relief was based upon the rescission of the contract. That election to rescind has never been withdrawn, but stands of record as the deliberate act of the plaintiffs. It might well be that, although the chancellor had the power to grant the application, if the plaintiffs' debt was not due he would not, in the exercise of his discretion, have appointed a receiver, if the notes had been outstanding, and had had some time to run. It is impossible to tell what effect the allegation in question in the petition presented to him had upon his judicial action. I do not think that, under the conceded facts in this case, the plaintiffs can recover upon the notes, and that the exception of the plaintiffs should be overruled, and judgment ordered on the verdict, with costs.

SEDGWICK, C. J.   I agree with Judge INGRAHAM, and wish to point out that, besides the election to avoid the notes, in the mere bringing of the proceeding in chancery in New Jersey, the plaintiffs, by means of that proceeding, gained an advantage, and the defendant suffered a disadvantage. This, of itself, made the election final. That proceeding was begun by a bill of complaint. It alleged that the defendant, by false and fraudulent representations, particularly set forth, induced the plaintiffs to sell and deliver to defendant certain goods, for the price of which the defendant delivered its promissory notes to the plaintiffs, "which notes your orators bring into court, and tender themselves willing to surrender under the direction of the court;" "and your orators, therefore, repudiate the contract, and would take back the materials delivered, if it were possible to do so at this length of time."

The petition showed that at the time of the bill the promissory notes were not due; that the defendant was a corporation formed under the laws of the state of New York; that it owned property situated within the state of New Jersey; and that it was insolvent. The bill prayed that a receiver be appointed of the property of the defendant. An order to show cause why such a receiver should not be appointed was argued, the defendant appearing by counsel, and it was then ordered that Henry T. Hopper, Esq., "be appointed, and he is hereby appointed, receiver, with full power to demand, sue for, collect, and receive and take into his possession all the goods, etc., of any and every description, belonging" to the said company. It appeared on the trial that it became the duty of the receiver to turn the property taken by him in the proceeding into money, and to distribute that among such persons as should prove any claim against the company. This duty had not as yet been performed, but that the receiver was about to perform it in the future. It would seem clear that, if this were all the evidence, an election had been made; and that under it, having procured a transfer of defendant's property in New Jersey, and that, too, at a time before the notes became due, the plaintiffs had avoided the notes, and could not thereafter resort to the notes.

The learned counsel for the plaintiffs claim that the court below erred in excluding the evidence offered by plaintiffs to show that the action of the court in chancery in appointing a receiver was not based at all on the allegation in the bill charging fraud against the defendant, and to show that the charge of fraud was withdrawn. The evidence excluded was in part an order, made upon the motion of the defendant in the chancery proceedings, that the promissory notes in question be surrendered in accordance with the tender in the bill, or that the same be impounded with the clerk of the court. The order recited that the complainants did not intend to rely on the statements of fraud on the defendant's part set up in the bill, and proceeded to state that the chancellor, being of the opinion, for divers reasons him thereto moving,

that said motion should be denied, ordered that the same be denied, with costs. Whatever might be the effect of the declaration of the counsel for complainants, that effect concerned the future, and did not annul the legal effect of what had already happened on the filing of the bill and the appointment of the receiver. Indeed, the withdrawing of the allegations of fraud would have left the prayer for the appointment of a receiver without any ground, for, as has been shown, there would have been left no allegations of fact that would show that the complainants claimed that the defendant was indebted in contract; and, several months after the order that was excluded from the testimony was made, the plaintiffs here recognized the authority of the receiver as continuing, by entering an order of the discontinuance of an action against the corporation upon the consent of the receiver. I am of opinion that the exclusion of the order did not injure the plaintiffs. If it had been admitted as evidence, the conclusion of the court upon the testimony admitted should not have been changed.

The defendant on the trial below proved, without objection, for the purpose of supporting its defense, that the plaintiffs had elected to avoid the notes, and to proceed against defendant for fraud; that the plaintiffs had begun an action in the state of New Jersey by attachment, which the sheriff had levied upon the defendant's property in that state. The attachment proceeded upon an affidavit that the defendant was indebted on contract. The defendant gave extrinsic evidence to show that the claim in the attachment was upon the sale of the goods for which the promissory notes in action were given, and argued that the notes must have been avoided for fraud by the plaintiffs, because the claim in the attachment was treated as maturing before the notes matured. The plaintiffs were, not permitted to show that the attachment suit had been discontinued by order. The order proposed for testimony, and the papers on which it was founded, appear in the case, and, in my opinion, if treated as admitted, they do not change the result of the decision below. That order of discontinuance was based upon the consent of the receiver appointed in the chancery proceeding. It recognized the right of that receiver to act for the corporation, and to take into his possession, as receiver, the property of the defendant. Its intended, if not actual, effect was that the sheriff should deliver the property levied upon by him to the receiver, and, at the least, it freed the title of the receiver from the claim of the sheriff. So that the discontinuance made clearer the advantage to the plaintiffs, and the disadvantage to the defendant, caused by the appointment of the receiver.

The court, on the trial below, did not allow the defendant to show that, at the time of the appointment of the receiver, the counsel for defendant here, who was complainant there, made a certain statement. The counsel offering the testimony did not explain the nature of this statement. The court, in excluding the statement, permitted the defendant to prove what ruling the chancellor made, if verbal or written. The court was right, as *prima facie* the statement of a counsel is not evidence of the existence of any fact. The result below should not be changed because in the chancery suit the defendant did not answer, and no judgment had been entered. The effect of not answering was that the defendant conceded the correctness of the charge made in the bill, and, if no judgment was entered, that was because the plaintiffs did not apply for judgment. The election was effectual upon the earlier appointment of the receiver. The same considerations are relevant to the position of plaintiffs, that they had not proved any claim before the receiver, and that the time for proving claims had expired. The receiver had possession of the property lawfully, as against the parties to this action. That property had been appropriated to the satisfaction of claims against the defendant, and, among them, of plaintiffs' claim. If plaintiffs omitted to secure their part of the benefit of that appropriation, none the less had the appropriation been made. As the appropriation had been made at the instance of the

plaintiffs, solely upon the position they took in the bill, that goods had been obtained by fraud, they were, at least from the time of the appointment of the receiver, held to the election then made. On the record it appears that the only right they claimed to become complainants was that they had been defrauded by the defendant. The judgment should be for defendant, plaintiffs' exception being overruled, with costs.